First, Mancini v. Northampton County Mr. Schwong, good morning. Thank you, Your Honor. My name is David Schwong. I represent Northampton County. John Brown, the Northampton County Executive, and Victor Scamilio, the former Northampton County Solicitor. In this case, the jury found that the reorganization of the Northampton County Solicitor's Office in 2014 resulting in the elimination of both of the full-time assistant solicitor positions did not result from discrimination based upon political affiliation. In light of the plaintiff's failure to establish that discrimination, the elimination of the positions in this reorganization by the county requires that, as a matter of law, this court find that the plaintiff was not entitled to a due process procedure pursuant to the reorganization exception to due process. Let me ask you one thing. The position of the county is that she, Mancini, was an at-will employee? Yes, but regardless of whether she was at-will or career service, the reorganization exception would eliminate the need to have due process because the courts that have addressed that issue... So she does not, in your view, she would not be entitled to due process? Correct. We think that might... What I was thinking, though, in going through the material... I'm sorry, Your Honor. What I was thinking in going through this material is, why don't you just fire her outright? You're fired. We're sorry. We don't need you anymore. She said, you are at-will. Your services are no longer required. Thank you for your service and move on. I mean, why do you have to go through this elaborate process of reorganization and so forth? Well, the decision was made in order to save economies and also for efficiency... I'm just wondering, if she's at-will, she can be fired on the spot, I think, if what you say is correct. The county executive and the county solicitor don't have authority to fire anyone. They couldn't have fired Ms. Mancini if they wanted to. They have to go through the process provided in the county, which requires them to make a recommendation to the county council, and then the county council... This is for at-will employees? For any positions within the county. In order to reorganize, to eliminate positions, to add positions, the county council has to approve that. Regardless if they were at-will or career service? You don't make a distinction between the two? Well, if you're reorganizing, yes, that's how you would have to eliminate positions. I don't see why you have to go through the reorganization in order to eliminate... in order to, let's say, discharge employees that are at-will. For example, when these positions were created, initially they had to go through the process of going to the county council to enact an ordinance to approve the position of a full-time assistant solicitor. So when you're going to eliminate the position of a full-time assistant solicitor, you have to go through the process of making a recommendation to council, which is what Mr. Brown and Mr. Stamilio did, and having the county council enact an ordinance to eliminate the full-time positions, and at the same time they enacted that ordinance also created the two new part-time assistant solicitor positions. You came out of the box pretty strong to say, hey, look, as a matter of law, we prevail. But we're not dealing with the city of Philadelphia here, which has thousands of employees. Isn't it possible that what your adversary is saying, couldn't there be a pretext to a reorganization? It doesn't affect that many people. Isn't it possible? Not in this case, Your Honor, because that issue was presented to the jury. The jury clearly found that there was no discrimination based upon political affiliation, and the plaintiff presented no other basis upon which she was claiming that there was a pretext or a sham. She had that opportunity to do so, and the jury didn't. Didn't the same jury find that she was denied due process? What's that? Didn't the same jury find that she was denied due process? Yes, but that issue shouldn't have gone to the jury based on the reorganization exception. The reorganization exception says it would be futile, it would be idle, it would be unnecessary to hold a hearing when you have the process of a reorganization in place. Did you object to that issue being presented to the jury? I'm sorry, Your Honor. Did you object to that issue being presented to the jury? Yes, Your Honor. We've made a motion based upon Rule 50 at the end of the plaintiff's case and also at the conclusion of the trial that the judge should rule in our favor on the due process issue. You don't think there were factual underpinnings to that issue that were properly presented to the jury? Well, certainly not once the jury reached the conclusion that there was no discrimination based upon political affiliation. And that was, again, the cases that deal with the issue, the Duffy case from the First Circuit, that indicates that due process is not required based upon a valid reorganization. The Whalen case out of the First Circuit indicates that a hearing when reorganization is done for cost-cutting measures doesn't need to be provided due process. Did you participate in the questions that were submitted to the jury by the district judge? Yes, Your Honor. I mean, it is really a remarkable document because it covers really all the bases that are pertinent to this very complicated case. But the very first question is, do you find you, the jury, by a preponderance of the evidence, that Jill Mancini's position as a full-time solicitor was a career service position? And they said yes, resoundingly. That was a factual issue presented to the jury. And the jury, I assume after proper instruction, said yes. And again, Your Honor... It's your honor, gain, set, and match. No, Your Honor, that's not correct. Because when the jury decided that there was no political discrimination, that, in effect, meant that whether she was career service or not, she wasn't entitled to a due process hearing. Let me ask you, in the Northampton County Home Rule Charter, Section 802, as I understand your position right now, you're telling us that she was at will, right? Well... Is that your position right now? Our position is that she was at will based upon the case laws... That's what your position is, she's at will. Yes, and NAIF and those cases that decided... What's so specific to your county? So take a look at your Home Rule Charter and tell me what definition she satisfies to suggest she's at will, as opposed to the language that says, all other office employees shall be members of a career service. Is there an exception for a full-time solicitor? Well, it doesn't say that specifically. No, it doesn't say it at all, not specifically. It doesn't say it at all, correct? So a fair reading of this charter would suggest that she's career service, correct? Well, our argument on that is based on the case law. Don't give me an argument. The text of the Home Rule Charter would make it pretty clear that she's career service. Well, the provisions provide that a part-time professional employee is exempt from service. Which provision identifies a full-time solicitor as anything other than career service? Well, there isn't any specifically in the Home Rule Charter, Your Honor. So you're telling me that NIST trumps the Home Rule Charter? Yes, Your Honor. Or specific to your county with a different charter, correct? Well, but that, again, dealt with the issue of whether a municipal entity, the executive in a municipal entity can rely upon the advice and consultation of a solicitor. Nobody should be required to have an attorney represent them who they don't have confidence and trust in. And that's what the NIST case talked about. That's what the NAIF case talked about. The cases that we cited in our brief, Wetzel, they all deal with the fact that when an executive is in office, they have lawyers, they have a solicitor and assistant solicitors who provide advice with respect to operation of the county. That's not what your Home Rule Charter says. So we'll tension then between the Home Rule Charter and Northampton County and NIST, right? Again, I would concede that the Home Rule Charter doesn't specifically exclude full-time assistant solicitors from the career service. The only way they would fit into the Home Rule Charter would be, all other officers and employees shall be members of the career service, right? Well, that's how the plaintiffs contend that they fit in. And that's what the jury found as well, right? Well, they found that she was career service. But again, based on the reorganization exception, it doesn't matter whether she's career service or not. The reorganization exception applies even to career service employees, so that if someone's position is eliminated. And you have to remember, this is not a position that she was laid off because of her own conduct. She was not being disciplined. She was not being laid off because of her performance. She was laid off because the county was reorganizing the solicitor's office based upon cost-saving measures and to increase efficiency in the solicitor's office. Well, the jury apparently disagreed with you, and it found that her due process rights to a hearing were indeed violated by Northampton County. I do think it's important, though, that Judge Rusrepo was raising a point that distinguishes this case from the Ness case, doesn't it? Because in Ness, I believe it was the York Administrative Code specified clearly that the city solicitor, which is what Ms. Mancini was, or an assistant solicitor, served at the pleasure of the mayor. Now, if you served at the pleasure of the mayor, the mayor can step in and say, thank you for your service, I'm going to have to let you go. But that wasn't the circumstance here because Northampton did not have any such provision. Identify where in this reorganization provision, what language supports your position that during a reorganization, career service employees can be terminated at will? This is a reproduced record at 3380. Do you have a copy of your charter? The manual provides that. I'll tell you the home rule charter. Take a look at the reorganization provision, which is section 905 and 906. Tell me where in that charter, what language supports your position that career service employees can be terminated at will during a reorganization? It provides in 905 that the county executive has the power to organize and reorganize the structure of the agencies under his direction as supervision and to assign and reassign their functions, powers, and duties by submitting to the county council a written proposal on the matter, which is what he did in this instance. And the county council then made the decision to adopt a resolution to eliminate the positions of full-time assistant solicitors. That gives them the authority to take that action, whether it's a career service or an exempt employee. They can reorganize the office for any purpose. And again, a due process hearing, the intent of that is to provide an employee with the opportunity to fight charges relating to claims that they acted inappropriately, that they were being charged with disciplinary actions. In this case, they're seeking, the due process would be with respect to whether or not the county is actually saving money, whether the reorganization is appropriate or not. That's not what a due process hearing is meant to address. Again, as I indicated initially, it would be futile for the county to have a due process hearing when you're talking about the issues of whether reorganization of an office is appropriate, whether the cost-cutting measures that the office is taking is appropriate. And the plaintiff had plenty of opportunity to provide that evidence to the jury. We're hearing your case strictly from the standpoint of the county. But what about from Mancini's standpoint? What if we accept her position that she fully expected that her job would be a career job, that she was not a political appointee? Well, actually, she did get a hearing. She got a hearing at the third-step level. She appealed that to the employee appeal board. Actually, she got two hearings. She got several hearings. Finally, she got one before a jury. And that's why we also made the argument that as a matter of law – I'm sorry. Let's go back to the initial point, though. Should we take into account her expectations when she took the job? I don't think that what her expectations are affect whether or not she can have the expectation that she's going to have a permanent position and that full-time position will never be eliminated. I don't think any employee in government service can expect that their position will continue for as long as they want to stay in that position because governments are – Government, including civil service employees? Career service employees? Even if – those positions can still be eliminated, Your Honor. With due process, right? Well, if there be – again, the reorganization exception – Separate from the reorganization piece. They can be eliminated with due process. Is your position that she was afforded due process here? She was advised that the board would be considering the elimination of these positions. She did not attend the county council's meeting where the board voted to eliminate those positions. And then, again, she was given notice. Even though the county felt that she was not entitled to a due process hearing, she was still given the opportunity to proceed. She had an attorney, too, right? I mean, she was given an opportunity to show up at a hearing without an attorney. Well, at the employee appeal board hearing, she had an attorney. She was never given a decision, right? No decision was ever made. Ultimately by the county. That's not an issue of due process. There was a decision. The board was split evenly two to two. So she got a decision with respect to that, which would ultimately have the opportunity to appeal that to the Commonwealth, the Common Pleas Court, which she did not do. Okay. We're going to hear from the other side. Thank you, Mr. Sean. Mr. Riley? Good morning, Your Honor. May it please the Court. Patrick Riley on behalf of Joe Mancini of the Napoli in this case. Your Honors, I have focused directly in on what the point is in this particular appeal. The case is really not that complicated. The case, in my view, is really rather simple. It just became complicated because the county refused to acknowledge their own home rule charter, their own administrative code, their own personnel policies, and they didn't even listen to their own employees. Redampton County is a home rule charter. So under the Pennsylvania home rule charter county, so under the Pennsylvania Constitution, it has the right to establish its own form of governance. And it did. That's an aid to deciding the case. But we have a case in Wetzel which says that solicitor position is inherently a policymaking position. It may be, but the home rule charter says otherwise. The home rule charter in this case, as you acknowledge, points out in Section 802 who are exempt service employees and says everyone else is a career service employee entitled to due process, entitled to a property interest in their position. What do you make of the argument that reorganization trumps all of this? Well, again, the county chooses, treats the home rule charter and its policies like it's an a la carte menu, that they can pick something off one day that they like and ignore the rest of it. What council failed to tell you is that under the policies of Northampton County, and in particular its Code 3.525, which we refer to in our brief, that is a section of the code that says that the county has the authority to employ a reduction in force or to eliminate positions. But it goes on to say any employee who is aggrieved by that and feels that it is not appropriate has the right to file a grievance and to allege that the selection of the particular layoff unit was arbitrary, capricious, or a violation of law. So they're telling you on the one hand we have the right to reorganize, but what they're failing to tell you is they also gave the employees due process rights. For those when there's a reorganization or a layoff, their own policies say you have the due process rights to appeal that particular decision. And that's what occurred in this particular case. What is the citation again? It's on page 47 of our brief, and it's at 49,3380-83. And it's a reference to the Northampton County Employee Policy Manual Code 3.525. So very specifically, they've gone a step beyond and given their employees when there's a layoff the right to file an appeal. If you look at the cases that deal with reorganization, there's a difference between the standard that's applied in a reorganization, a Title VII case, and the standard that's applied in a due process case. And we haven't talked about what the standard is in a due process case. This arises when there's an allegation that the reorganization was a sham, as we alleged it was in this particular case, and that what the county in actuality did was recognize that there was an assistant county solicitor who was full-time, who was career service, who had a property interest in her job, and they couldn't simply fire her because she was career service. Let's take that then. Let's follow your adversary's argument. Your adversary's argument is, okay, it's a sham. It's alleged in the complaint that it was based upon political affiliation. The jury found against you on that one. They did. How can this be a due process violation? Isn't that sort of a threshold to your due process claim? The jury found that the reorganization was not politically motivated, period. They didn't say that there was nothing arbitrary. What could be another basis for the pretext? Well, the pretext in this particular instance is the county knew, regardless of whether it's political affiliation or not, they knew they couldn't get rid of Jill Mancini for whatever reason they wanted to get rid of Jill Mancini because of the Home Rule Charter and her protected status as a career service employee. So they decided, let's yell reorganization. Let's say this is reorganization. And as the court noted, I believe it was in the Neff case, if you don't follow the standard and look at the fact that there could be something arbitrary or capricious about it or that it could not be a reorganization in fact, which it was not in this case, anyone could say reorganization to get rid of someone. The reason this was not a bona fide reorganization in this particular case is you have to look at what was done by the county. When Mr. Brown became county executive, he contacted Mr. Scamilio and said, let's talk about what we can do in the solicitor's office. In November of 2013, Mr. Scamilio wrote a memo to Mr. Brown in which he said to Mr. Brown, we have to be careful. These people, and he was talking about the two full-time assistant county solicitors, may well be career service employees. And if they are career service employees, they are entitled to due process. And if we terminate them, they are going to allege that it was politically motivated. Once that memo was prepared, they did nothing further, absolutely nothing to research whether or not in fact what he was alleging in his initial memo was correct and whether there was any way that they could get around it. They simply came up with this reorganization idea and said, we are doing it for efficiency purposes. They did no investigation. When the position was created, Carl Longenbach was the county solicitor at the time. He provided a lot of testimony as to what he did to prepare and to research whether or not a full-time assistant county solicitor was required. He looked at other counties. He did research as to the work that needed to be done. And his intention, his testified intention, was that the creation of the full-time position was to avoid the change of administration and the change of political parties to provide continuity in that position. He said that is what he had found in other counties. Nothing was done by Mr. Scamilio in this case to do that kind of research. The position was intended not to be a political position, and if you look at what the county's own witnesses testified to at the time of trial, they said this is not a political position. There is no political affiliation required in this particular position. So when you look at what the end result was of this reorganization, in the cases that are cited in the county's brief, there is a department that is eliminated. There is a position that is eliminated. There is no longer a need for the particular job that is being eliminated. In this instance, that wasn't the case. The same work that Joe Mancini was doing had to be done. It wasn't because the work was no longer necessary. All they did in this case was change the name from full-time assistant county solicitor to part-time assistant county solicitor. It was a name change, only it was not a bona fide reorganization. In terms of their suggestion that it was done for efficiency, and I had questioned at trial, there is something called a desk audit that they could have done, that human resources could have done to see what the workload was of the assistant county solicitors, both full-time and part-time, to see if it was necessary for them to change this position for any reason. They didn't do that. What they did do after the election was propose a $715,000 contract, even though they are claiming they are trying to save money, a $715,000 contract for a consultant to come in and part and tell them, are the offices running efficiently? How would you describe the pretext here? It can't be her political affiliation, right, because the jury found against you on that. So what is the pretext? Just to get rid of her? Just to get rid of her. All the jury has to find is that it was an arbitrary or capricious decision made on the part of the county. If the county wanted the jury to find out whether it was a legitimate reorganization, there is a detailed jury questions that were presented that they could have asked, the county could have asked that one of the questions to the jury be, was this a legitimate reorganization? They didn't do that. So I take it you're disputing your adversary's argument that you're at a dead end now. Since the jury found against you on the First Amendment claim, you can't claim pretext, right? You don't agree with that? I don't agree with that. Well, I think I'm not quite sure how counsel was arguing. It sounded to me like counsel was saying not only are we at a dead end, she's not entitled to due process. And that's completely wrong because the Home Rule Charter says she's entitled to due process. Their own document says she's entitled to due process. I assume, Mr. Riley, that you are perfectly content with the jury's verdict. I'm sorry? I assume that you are perfectly content with the jury's verdict. I am. You're not seeking anything beyond what the jury has already decided? We had suggested that the decision to grant qualified immunity to Mr. Scamilio and to Mr. Brown was incorrect. How would that change the jury's verdict? I'm not sure that it would change the jury's verdict. I don't believe it would. It would be kind of redundant, wouldn't it? It would be. Counsel, as I understood your opposing counsel, he's suggesting that she was afforded due process because she had these hearings and at the end of the day there was a tie. So what do you make of that argument? Well, it's supposed to be effective and meaningful due process. In the first proceeding, she had a grievance hearing before a member of the county administration, certainly not someone who's independent, certainly not someone who doesn't sit with bias. As your Honor pointed out, the county was entitled to counsel. She asked to have counsel present. She was told she couldn't have counsel present at the grievance proceeding. They laughed at her when she presented her case. She's a lawyer, right? She is a lawyer, yes. Is that a distinction that we should concern ourselves with? I don't think so because, well, first of all, as we all know, any person who represents herself is a fool for a client. So it's not necessarily the area of law that she practices regularly. She worked in the county solicitor's office. Her private practice was extremely limited before she went into the county solicitor's office, and I don't think that you can hold it against her that she's a lawyer in terms of not being able to have counsel present with her. The final thing that they said to her was, we're not even sure why you're here. They didn't even understand the basis of why she had filed the grievance. They suggested it was based upon sexual harassment, which it was not. Moving to the appeal board, we had two lengthy hearings before the personnel appeal board, and unfortunately at that particular time there were only four members on the board. It was a two-to-two tie. Counsel said, well, that's a decision. It's not a decision because the letter that came said we're deadlocked and have been unable to reach a decision. That is not effective and meaningful due process. That doesn't mean an affirmance of the lower tribunal?  This issue of due process is in a sense subsumed in the jury's verdict, isn't it? It is. This is due process? It is. Thank you. Mr. Schwan? I'm surprised to hear Mr. Riley suggest that the plaintiff wasn't capable of representing herself at the grievance proceeding because of that. That's not what it says. Do you think due process is served well when somebody is not allowed to have an attorney there? Well, her position in the solicitor's office was to provide advice to the human relations office. She handled EEOC claims on behalf of North Carolina County. Is that the best practices with respect to due process that you can't bring counsel with you? Well, I don't know that she didn't, number one, she didn't have to bring counsel. She was told she couldn't bring counsel. Well, she had an attorney at the appeal board hearing. The process for due process, it's not a substantive claim. It's a procedural claim. There was a decision at the step three process relating to her grievance that she did appeal to the appeal board. She was provided notice of the intention to eliminate both of the full-time assistant solicitor positions. Again, it's important there were two people in the office or two positions that were full-time assistant solicitors. One was a Republican and one was a Democrat. Again, it goes back to this couldn't be a sham based upon political motivation and there is no other basis upon which she claimed that she was being discriminated against. If she doesn't have a political discrimination claim, then the reorganization can't be a sham. Again, it would be futile for her to have this. I would go back to section 3.525. Your adversary suggested, counsel, that it doesn't matter whether it's a First Amendment reason or a political reason. It could be just to get her and that's enough of a pretext to support her due process claim. But that's not what they claimed in front of the jury. They had an opportunity to make those arguments to the jury and the jury found in favor of the defendants on their political affiliation discrimination claim. Again, I go back to the point where that resolves the case because under the reorganization exception, she wasn't entitled to due process and even if she was, she received due process. Mr. Schwamm, if there's nothing further. Thank you, Your Honor. Thank you very much. Thank you both for your very helpful arguments and we'll take the case into consideration.